**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **CARMON D. FLYNN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:25-cv-722-RAH-CWB** |
| | ) | |
| **BRIDGECREST CREDIT** | ) | |
| **COMPANY, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**RECOMMENDATION OF THE MAGISTRATE JUDGE**</u>

**I.    Introduction**

Carmon D. Flynn filed this action in the Circuit Court of Montgomery County, Alabama to assert various claims against Bridgecrest Credit Company, LLC stemming from the repossession of a motor vehicle. (*See* Doc. 1-1). Because Flynn purported to assert claims under the Fair Credit Reporting Act and the Fair Debt Collection Practices Act, Bridgecrest timely removed proceedings to this court (*see* Doc. 1), and Flynn's ensuing motion to remand was denied (*see* Docs. 8 & 22). Bridgecrest now seeks to have Flynn compelled to pursue the underlying claims in arbitration. (*See* Doc. 11). As will be explained below, the Magistrate Judge has concluded that Bridgecrest's request should be granted.

**II.    Factual Background**

On July 12, 2023, Flynn purchased a 2018 Audi Q3 from Carvana, LLC as reflected in a "Retail Purchase Agreement / Bill of Sale." (*See* Doc. 11-1 at p. 12). Among the terms of purchase was the following provision regarding arbitration:

> **Arbitration Agreement:** The arbitration agreement entered into between You and Dealership, including any arbitration provision in any retail installment contract or other finance agreement executed in connection with this Agreement is incorporated by reference into, and is part of, this Agreement. …

1

(*Id*. at p. 15).  Financing was set out in a "Retail Installment Contract and Security Agreement" (*see id*. at p. 6), and a freestanding "Arbitration Agreement | Wavier of Purchaser's Right to Sue" addressed a variety of potential claims relating to the transaction (*see id*. at p. 17; *see also id*. at p. 18, § 1.2).  All three documents are affixed with a DocuSign signature purporting to be from Flynn and verified with the same serial number "5AF563BA49AF478."  (*See id*. at pp. 10, 15, 23).  Flynn confirmed on the record at the January 28, 2026 hearing that she does not dispute that the electronic signatures are hers.

At the top of the "Arbitration Agreement | Wavier of Purchaser's Right to Sue," the title of the document appears in large, bold, capitalized font.  (*See id*. at p. 17).  Immediately underneath is another bold, capitalized heading "**SUMMARY OF ARBITRATION AGREEMENT**."  (*Id*.).  The summary states, in part, as follows:

> This document, called the "Arbitration Agreement," is part of the Contracts, defined below, that you and we are entering into.  In this document, you and we are both promising to accept arbitration for a wide range of our disputes.  Certain kinds of disputes are not covered; the Arbitration Agreement states which kinds those are.  The Arbitration Agreement covers every other kind of dispute that might come up between you and us (by "us," we are including any company to which we might assign your Contracts and any company hired to enforce the Contracts).  A dispute covered by the Arbitration Agreement could still be resolved in court but only if you and we both decide to use the court.  If either you or we decide that the dispute should be resolved by arbitration, then the Arbitration Agreement obligates both of us to accept arbitration.
> \*\*\*
> This Arbitration Agreement means that (except for the disputes that are not covered, as mentioned above), you and we are both giving up our right to go to court to resolve disputes between us.  In arbitration, our dispute will be decided by a neutral arbitrator and not by a judge or jury.  As a result, **for the disputes that this Arbitration Agreement covers, you and we are both waiving our rights to a jury trial.**  A dispute could end up before a jury if both you and we decide to use a court and a jury; but the Arbitration Agreement allows either you or we to insist on arbitration where there will be no jury.
> \*\*\*
> This is only a summary.  As with all legal agreements, **please read the entire Arbitration Agreement carefully before you sign.**  This Arbitration Agreement will substantially affect your rights.

(*Id*.) (bold in original).  The summary also provides notice of a right to opt out of arbitration:

> This Arbitration Agreement gives you a time-limited option to opt out from your promise to accept arbitration.  If you opt out, we will also not be obligated to accept arbitration, and certain other promises in this Arbitration Agreement will also end, as noted below.  **To choose this option you must notify us in the 30 days after you sign this Arbitration Agreement, and you must follow the instructions under the heading "Your Option to Reject Arbitration Promises."  You will need to act by that 30-day deadline or you lose this option.**

(*Id*.) (bold in original).[1]

The agreement goes on to define its key terms, which include the following:

1.2 "Claims" has the broadest reasonable meaning, and means any claims, counterclaims, crossclaims, third-party claims, disputes, or controversies between You and Us, whether on an individual or a class basis, whether arising in contract, tort, equity, pursuant to statute, regulation ordinance, or otherwise, relating to or arising from any of the following:

(a) the Vehicle, its features, mileage, condition, or accident history;
(b) advertisements, promotions, or oral or written statements regarding the Vehicle or the Contracts;
(c) registration of, title to, or liens on the Vehicle;

---

[1]  The section containing the opt-out provision is set forth later in the agreement as follows:

> **3.  <u>YOUR LIMITED OPTION TO OPT OUT OF CERTAIN PROVISIONS</u>.  Under this Section 3, You may opt out of Section 2 above, the provisions that obligate You and Us to accept arbitration on demand in many circumstances.  If you exercise this option in accordance with this Section 3, neither You nor We will have the right to require arbitration of any Claims.  Your exercise of the option under this Section 3 will not affect any other aspect of this Agreement or Your Contracts.  For You to exercise this option, We must <u>receive</u> a signed writing (the "Opt-Out Notice") from You within 30 days of the date You sign this Arbitration Agreement, stating that You are opting out of Section 2 of the Agreement.  The Opt-Out Notice must include Your name, address, the Vehicle Identification Number ("VIN") of any vehicle identified in the Contracts, and the date you signed the Arbitration Agreement. You must email the notice to arbitrationoptout@carvana.com.  Your Opt-Out Notices must be <u>received</u> by 11:59pm, Arizona time, on the 30th day from the date You signed this Arbitration Agreement.  If the Opt-Out Notice is sent on Your behalf by a third party, then such third party must include evidence of his or her authority to submit the Opt-Out Notice on Your behalf.  If You exercise the option under this Section 3, opting out of Section 2 will not opt You out of any other arbitration agreement between You and Us.**

(Doc. 11-1 at p. 20) (bold and underlining in original).

(d) delivery of pick-up of the Vehicle;

(e) Your purchase, sale, or trade-in of the Vehicle;

(f) the Contracts, and duties or relationship arising therefrom;

(g) financing terms, credit applications, or credit reporting;

(h) origination or servicing of the Contracts;

(i) any goods and services incidental to the Contracts or the Vehicle, such as warranty service, extended vehicle service, or insurance coverage;

(j) the collection of amounts owed by You, or the repossession of the Vehicle;

(k) the rescission or termination of the Contracts; or

(l) the collection or disclosure of Your personal information.

The definition of "Claims" in this Agreement is not intended to determine whether a particular dispute includes a single Claim or multiple Claims.

1.3 "Contracts" means the Retail Purchase Agreement ... , Retail Installment Contract and Security Agreement ... , Loan Agreement and Disclosure Statement, Loan and Security Agreement, Carvana Limited Warranty, GAP Addendum, Vehicle Purchase Agreement, Vehicle Return Agreement, and/or any contract You signed with Us that refers to or incorporates this Arbitration Agreement.
***
1.5 "Us/We/Our" means Carvana, LLC, any purchaser, assignee, agent, or loan servicer of the Contracts, including but not limited to, Bridgecrest Acceptance Corporation, Bridgecrest Credit Company, LLC, and the parent companies, subsidiaries, affiliates, predecessors, successors, officers, directors, and employees of any of them.  "Us/We/Our" also means any warranty servicer or other party providing products or services to the Vehicle in connection with or incidental to the Contracts, and the parent companies, subsidiaries, affiliates, predecessors, successors, officers, directors, and employees of any of them.

(*Id*. at p. 18).  The agreement further provides the following specifics on how arbitration will be conducted:

Any arbitration shall be resolved by a single arbitrator in accordance with (1) the Federal Arbitration Act ("FAA"); (2) this Agreement; and (3) the [American Arbitration Association ("AAA")] Rules in effect at the time the arbitration is commenced, including the AAA Rules regarding the arbitrability of any claim or counterclaim, and including the Consumer Rules and, to the extent applicable, the Document Procedures and/or the Multiple Case Rules.

(*Id*. at p. 21).

The agreement additionally discloses that "[a]ny dispute relating to the validity, enforceability, interpretation, or scope of this Agreement, the arbitrability of any Claim, or other gateway issues of arbitrability, or any alleged waiver of this Agreement shall be exclusively

4

resolved by the arbitrator and not by a court." (*Id*. at p. 20). The following notice then appears immediately above the signature line at the end of the agreement: "**BY SIGNING BELOW, YOU ACKNOWLEDGE THAT YOU HAVE READ, UNDERSTAND, AND EXPRESSLY AGREE TO THE ABOVE AGREEMENT.  THE AGREEMENT MAY SUBSTANTIALLY LIMIT YOUR RIGHTS IN THE EVENT OF A DISPUTE.  YOU ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT.**" (*Id*. at p. 23) (bold and capitalization in original).

Bridgecrest is a third-party loan servicer for Carvana, LLC with responsibility for servicing Flynn's account. (*See* Doc. 11-1 at p. 3, ¶ 3).  According to the Complaint, Bridgecrest wrongfully had the vehicle repossessed. (*See generally* Doc. 1-2).  Flynn further alleges that a Bridgecrest representative informed her she would have to pay $3,942.00 to get the vehicle returned, that she attempted to make the required payment, that she was informed she instead would have to pay $30,000.00, and that the vehicle ultimately was sold.  (*Id*. at ¶¶ 6-9).

## III.    Legal Standard

Section 2 of the Federal Arbitration Act (the "FAA") provides as follows:

> A written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]

9 U.S.C. § 2.  Consequently, "Section 2 requires a two-pronged inquiry:  first, whether there is an arbitration agreement in writing; and second, if so, whether the agreement is part of a transaction involving interstate commerce." *Chambers v. Groome Transp. of Alabama*, 41 F. Supp. 3d 1327, 1338 (M.D. Ala. 2014); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28 (1985); *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004).

"The party seeking to compel arbitration bears the initial burden of proving the existence of a contract calling for arbitration, and providing that the contract evidences a transaction involving interstate commerce.  Once the moving party meets that initial burden, the party opposing arbitration has the burden of establishing that the agreement is invalid, or that it does not apply to the dispute in question."  *Wisener v. CMH Homes, Inc.*, No. 1:21-cv-1075, 2022 WL 17839010, *3 (N.D. Ala. Dec. 21, 2022) (citing *SSC Selma Operating Co., LLC v. Fikes*, 238 So. 3d 635, 636-37 (Ala. 2017)); *see also Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000).  The decision of whether to compel arbitration is typically for the court; however, parties may agree to have disagreements over arbitrability determined by the arbitrator. *See Rent-A-Center*, *West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010).

Because the standard for determining the existence of an arbitration agreement is the same as that applied to a motion for summary judgment, an order compelling arbitration is "'in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate.'"  *In re Checking Acct. Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (citation omitted); *Bazemore v. Jefferson Capital Sys., LLC*, 827 F. 3d 1325, 1333 (11th Cir. 2016) ("[A] District Court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement.").  And evidence of formation is to be viewed in a light most favorable to the non-moving party.  *See Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1215 n.3 (11th Cir. 2021).  On the other hand, "Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

## IV.    Discussion[2]

As noted above, the "Arbitration Agreement | Wavier of Purchaser's Right to Sue" contains a clause expressly delegating threshold issues to the arbitrator:

> **4. Arbitrability Delegated to Arbitrator**.  Any dispute relating to the validity, enforceability, interpretation, or scope of this Agreement, the arbitrability of any Claim, or other gateway issues of arbitrability, or any alleged waiver of this Agreement shall be exclusively resolved by the arbitrator and not by a court.

(Doc. 11-1 at p. 20).  Broad delegation clauses of that type have been upheld as enforceable.  *See, e.g., Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 68 (2019) ("We have explained that an 'agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.'") (citing *Rent-A-Center*, 561 U.S. at 70).  The court then is constrained in its review and may only examine challenges to the delegation clause itself.  *See Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) ("When an arbitration agreement contains a delegation provision and the plaintiff raises a challenge to the contract *as a whole*, the federal courts may not review his claim because it has been committed to the power of the arbitrator.  Instead, the plaintiff must 'challenge[] the delegation provision *specifically*.'") (emphasis in original) (citing *Rent-A-Center*, 561 U.S. at 72; *see also id*. at 1144 ("[W]here an arbitration agreement contains a delegation provision—committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable—the courts only retain jurisdiction to review a challenge to that specific provision.")

---

[2] It again is noted that Flynn has admitted to electronically signing the documents at issue, including the "Arbitration Agreement | Wavier of Purchaser's Right to Sue."  Flynn likewise has not disputed that the transaction sufficiently involves interstate commerce so as to invoke the FAA. (*See* Doc. 11-1 at p. 23, ¶ 15: "Because the Contracts involve a transaction in interstate commerce, the FAA governs this Agreement and any arbitration pursuant to this Agreement to the exclusion of any state law inconsistent with the FAA.").  Only other issues thus warrant further discussion.

(citing *Rent-A-Center*, 561 U.S. at 72); *Parm v. Nat'l Bank of Ca., N.A.*, 835 F.3d 1331, 1335 (11th Cir. 2016) ("Only if [a court] determine[s] that the delegation clause is itself invalid or unenforceable may [the court] review the enforceability of the arbitration agreement as a whole.").

It is not disputed here that Flynn has challenged the delegation provision—at least to some extent. (Doc. 14 at p. 1: "Plaintiff specifically challenges the delegation provision under Rent-A-Center and contract formation."; Doc. 20 at p. 3: "Flynn challenges the validity and enforceability of the delegation clause on several grounds … ."). Accordingly, it is proper for the court to sever the clause and determine its enforceability apart from the larger agreement. *See Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1303 (11th Cir. 2022) ("For the purpose of assessing its validity or enforceability, a delegation agreement is 'severable' from the primary arbitration agreement in which it is contained. … And while, under the delegation agreement, challenges to the primary arbitration agreement's validity or enforceability are off-limits to the courts, … a court must always consider a validity or enforceability challenge that is 'specific' to the delegation agreement before enforcing it.") (citations omitted).

Flynn first purports to challenge "whether [the delegation clause] was conspicuous, explained, and reasonably communicated before assent." (Doc. 14 at p. 2). But the delegation clause appears in the same font as the remainder of the arbitration agreement and follows the heading—which appears in bold and underlined text—"**Arbitrability Delegated to Arbitrator**." (Doc. 11-1 at p. 20). Not only is the heading unambiguous, the remainder of the delegation clause provides in clear language that "[a]ny dispute relating to the validity, enforceability, interpretation, or scope of this Agreement, the arbitrability of any Claim, or other gateway issues of arbitrability, … shall be exclusively resolved by the arbitrator and not by a court." (*Id.*). It is generally recognized that provisions are not inconspicuous when presented in the same font and type size

8

as the larger document.  *See Mitchell v. Seymour*, No. 2:22-cv-1381, 2023 WL 2169039, *5 (N.D. Ala. Feb. 2, 2023); *see also Ex parte Alaska Bush Adventures, LLC*, 168 So. 3d 1195, 1199 (Ala. 2014) ("As the defendants correctly noted: 'The arbitration clause is set forth in the same size print and the same font as the rest of the contract terms, and is located in the body of the one-page contract.'  Therefore, this argument provides no basis for concluding that the arbitration clause was induced by fraud or was otherwise unenforceable."); *Southern Energy Homes, Inc. v. Ard*, 772 So. 2d 1131, 1135 (Ala. 2000) ("Because, in all other respects, the arbitration language is just as conspicuous as the other provisions of the warranty, however, we find that it is a binding part of the warranty.").  Certainly Flynn has presented no authority that would require a delegation provision to be more conspicuous than the very arbitration agreement in which it is contained. *Compare Advance Tank & Constr. Co. v. Gulf Coast Asphalt Co.*, 968 So. 2d 520, 528 (Ala. 2006) ("[T]his Court has generally recognized that there is no duty to expressly disclose the existence of an arbitration provision.") (citations omitted).  And under Alabama contract law, there is no unilateral requirement to point out contractual provisions related to arbitration or otherwise. *See First Family Fin. Servs., Inc. v. Rogers*, 736 So. 2d 553, 558 (Ala. 1999) ("[W]hen a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract, including an arbitration provision, and will be bound thereby.") (citations committed).

Flynn next asserts that the delegation clause is unconscionable.  (*See* Doc. 14 at p. 2). "[U]nconscionability is an affirmative defense, and the party asserting the defense bears the burden of proving unconscionability."  *Blue Cross Blue Shield of Alabama v. Rigas*, 923 So. 2d 1077, 1086 (Ala. 2005).  Alabama courts consider four factors when determining whether an agreement is unconscionable:

> In addition to finding that one party was unsophisticated and/or uneducated, a court should ask (1) whether there was an absence of meaningful choice on one party's part, (2) whether the contractual terms are unreasonably favorable to one party, (3) whether there was unequal bargaining power among the parties, and (4) whether there were oppressive, one-sided, or patently unfair terms in the contract.

*Layne v. Garner*, 612 So. 2d 404, 408 (Ala. 1992).  Put most simply, "'[a]n unconscionable ... contractual provision is defined as a ... provision such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" *Southern United Fire Ins. Co. v. Howard*, 775 So. 2d 156, 163 (Ala. 2000) (citations and internal quotations omitted).

To demonstrate unconscionability in the context of arbitration agreements, a challenging party must show that the provision was both substantively unconscionable and procedurally unconscionable.  *See Rigas*, 923 So. 2d at 1086-87.  Applying that standard to the delegation clause here, the court observes that Flynn has identified purported "substantive defects" that she says "risk delaying or constraining an individual consumer's ability to obtain a hearing," which in turn "may chill statutory remedies."  (*See* Doc. 14 at p. 2).  Nothing in the delegation clause, however, can be deemed substantively unconscionable in that regard.  The arbitration agreement specifically incorporates the Consumer Rules of the American Arbitration Association, which set out procedures for matters to be heard on a timely basis.  Under the Consumer Rules, a preliminary hearing is to be held "[a]s promptly as practicable after the appointment for the arbitration," *see* R-19, and "[t]he arbitrator … shall conduct the proceedings with a view to expediting the resolution of the dispute," *see* R-30(b).  The Consumer Rules further specifically empower the arbitrator to determine "the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim."  *See* R-7.  Delegating threshold issues to the arbitrator thus would not appear to unreasonably delay or constrain the right to a hearing on any issue, and

10

Flynn has cited no legal authority supporting a contrary conclusion.  Nor does the court observe any impact that would rise to the level of substantive unconscionability as defined by Alabama courts.  *See, e.g., Ex parte Foster*, 758 So. 2d 516, 520 n.4 (Ala. 1999).[3]

As to procedural unconscionability, Flynn again challenges whether she was given meaningful notice of the delegation clause so as to have voluntarily assented to it.  (*See* Doc. 14 at p. 2).  But as has already been addressed, the delegation clause was sufficiently conspicuous—and Flynn has presented no allegation or evidence of any type of "deception" or "refusal to bargain." *See Ex parte Thicklin*, 824 So. 2d 723, 731 (Ala. 2002) ("Procedural unconscionability deals with 'procedural deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms, today often analyzed in terms of whether the imposed-upon party had meaningful choice about whether and how to enter into the transaction.'").  To the extent Flynn asserts that the delegation clause was procured through adhesion, it must be recognized that "a contract is not procedurally unconscionable simply because it is a contract of adhesion." *In re Checking Acct. Overdraft Litig.*, 856 F. App'x 238, 247 (11th Cir. 2021) (citations omitted); *see also Scurtu v. Int'l Student Exch.*, 523 F. Supp. 2d 1313, 1326 (S.D. Ala. 2007) ("Alabama courts have categorically declared that 'in regard to arbitration agreements, certain defenses— including the defense that an arbitration agreement is a contract of adhesion—are without merit.'") (quoting *Johnnie's Homes, Inc. v. Holt*, 790 So. 2d 956, 964 (Ala. 2001)).  And Flynn has failed to offer any supporting allegations or evidence such as having sought and/or being unable to

---

[3] Flynn expresses concern over the prospect for "document-only procedures" (*see* Doc. 14 at p. 2), but the undersigned notes that the Consumer Rules contemplate resolution through "Document Submission" only by agreement or when the no claim/counterclaim exceeds $25,000. *See* Procedures for the Resolution of Disputes through Document Submission at D-1; *see also* Consumer Rules at R-30(d) ("The parties may agree to waive oral hearings in any case and may also agree to utilize the Procedures for the Resolution of Disputes through Document Submission.").

obtain a similar vehicle without an arbitration provision that included a delegation clause. *See Giles v. Hamilton Home Builders LLC*, No. CV 23-00323, 2023 WL 8459907, *8 (S.D. Ala. Dec. 4, 2023) ("Alabama courts will not find that the claimant lacked a meaningful choice when there is no indication that they sought out other sellers with more favorable arbitration terms, or at least attempted to negotiate the deletion of the arbitration provision.") (citing *Leeman v. Cook's Pest Control, Inc.*, 902 So. 2d 641, 647 (Ala. 2004), *Am. Gen. Fin., Inc. v. Branch*, 793 So. 2d 738, 752 (Ala. 2000), *Conseco Fin. Corp.-Alabama v. Boone*, 838 So. 2d 370, 373 (Ala. 2002), *Green Tree Fin. Corp. of Alabama v. Vintson*, 753 So. 2d 497, 504 (Ala. 1999), *Rigas*, 923 So. 2d at 1088-89, and *Tisaw v. AmSouth Bancorporation*, No. 4:06-cv-0882, 2006 WL 8437813, *9 (M.D. Ala. Aug. 25, 2006); *see also Bess v. Check Express*, 294 F.3d 1298, 1308-09 (11th Cir. 2002).  The record instead reflects that Flynn had an election to opt out of the arbitration agreement—and thereby the delegation clause—entirely.

So potential questions concerning what specific claims, if any at all, should be arbitrated will be for the arbitrator to decide as part of the arbitration process.  Because Flynn's remaining contentions go to arbitration generally and not to the delegation clause specifically, the court cannot address them.  *See Parnell*, 804 F.3d at 1146 ("When an arbitration agreement contains a delegation provision and the plaintiff raises a challenge to the contract *as a whole*, the federal courts may not review his claim because it has been committed to the power of the arbitrator.") (emphasis in original).  It likewise would be improper for the court to impose Flynn's requested "protective conditions" for arbitration.  *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("'[P]rocedural questions which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator, to decide.") (emphasis in original and internal quotation marks omitted).

12

**V.      Conclusion**

For the reasons set forth above, it is the **RECOMMENDATION** of the Magistrate Judge that the pending Motion to Compel Arbitration and Stay Proceedings (Doc. 11) be granted and that the court direct as follows:

- that Flynn must commence arbitration proceedings within 30 days;

- that the parties must file a joint status report every 90 days;

- that a final status report must be filed no later than 21 days after conclusion of the arbitration proceedings; and

- that all proceedings in this court be stayed in the interim.[4]

It is **ORDERED** that all objections to this Recommendation must be filed **no later than February 19, 2026.**  An objecting party must identify the specific portion(s) of factual findings/ legal conclusions to which objection is made and must describe in detail the basis for each objection.  Frivolous, conclusive, or general objections will not be considered.

After receiving objections, the District Judge will conduct a *de novo* review of the challenged findings and recommendations.  The District Judge may accept, reject, or modify the Recommendation or may refer the matter back to the Magistrate Judge with instructions for further proceedings.  *See* 28 U.S.C. § 636(b)(1)(C).  A party shall be deemed to have waived the right to challenge on appeal a District Judge's order to the extent it is based upon unobjected-to findings or recommendations.  Unobjected-to factual and legal conclusions may be reviewed only for plain error if necessary in the interests of justice.  *See* 11th Cir. R. 3-1.

---

[4] *See* 9 U.S.C. § 3 (mandating a stay of proceedings, if requested, when a finding has been made that claims are referable to arbitration).

No party may appeal this Recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  A party may appeal only from a final judgment ultimately entered by the District Judge.

**DONE** this the 5th day of February 2026.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**